151 P.3d 727

**Shilo WILLIS, Plaintiff–Appellant,**

v.

**Craig SWAIN and First Insurance Company of Hawaii, Ltd., Defendants–Appellees,**

**and**

**Doe Defendants 1–100, Defendants.**

No. 25992.

Supreme Court of Hawai'i.

Dec. 15, 2006.

Fernando L. Cosio, on the request, for the plaintiff-appellant Shilo Willis.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

As the prevailing party on appeal to this court in *Willis v. Swain*, 112 Hawai'i 184, 145 P.3d 727 (2006) [hereinafter, *"Willis I"*], the plaintiff-appellant Shilo Willis requests fees and costs pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 39 and Hawai'i Revised Statutes (HRS) § 431:10C–211 (2005).[1]

---

1. HRAP Rule 39 provides in relevant part:

(a) **Civil costs; to whom allowed.** Except in criminal cases or as otherwise provided by law, ... if a judgment is reversed ..., costs shall be taxed against the appellee ... unless otherwise ordered; if a judgment is ... vacated, ..., the costs shall be allowed only as ordered by the appellate court....

    ....

(c) **Costs defined.** Costs in the appellate courts are defined as: (1) the cost of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal; ... (3) the fee for filing the appeal; (4) the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20¢ per page; ... and (6) any other costs authorized by statute or rule.

(d) **Request for Fees and Costs; Objections.**
(1) A party who desires an award of attorney's fees and costs shall request them by submitting an itemized and verified bill of fees and costs, together with a statement of authority for each category of items and, where appropriate, copies of invoices, bills, vouchers, and receipts.... A failure to provide authority for the award of attorney's fees and costs or necessary expenses will result in denial of that request.

    ....

HRS § 431:10C–211(a) provides in relevant part:
A person making a claim for personal injury protection benefits may be allowed an award of a reasonable sum for attorney's fees, and reasonable costs of suit in an action brought ... against an insurer who denies ... a claim for benefits under the policy, unless the court

Willis requests a total of $22,088.95. The defendant-appellee First Insurance Company of Hawaii, Ltd. (First Insurance) has filed an objection and Willis has replied.

For the reasons discussed *infra* in part II, we grant Willis's request, in part, as set forth fully *infra* in part III.

## I. *BACKGROUND*

The underlying dispute arose out of a traffic accident in which Willis was a passenger in the defendant Craig Swain's (unbeknownst to Willis) uninsured vehicle. *Willis I*, 112 Hawai'i at 187 & n. 4, 145 P.3d at 730 & n. 4. As an impecunious public benefits recipient, Willis's only automobile insurance was a "certificate policy" through the Joint Underwriting Plan (JUP),[2] underwritten by First Insurance. 112 Hawai'i at 185–87, 145 P.3d at 728–30. This plan did not include uninsured motorist (UM) coverage, though First Insurance would later argue that it had offered such benefits to Willis. *See* 112 Hawai'i at 187–88, 145 P.3d at 730–31. Accordingly, Willis lacked insurance that would have covered her injuries resulting from the subject accident; therefore, she filed an "assigned claim," *see supra* note 2, pursuant to HRS § 431:10C–408 (Supp.1998), which was also assigned to First Insurance. *See* 112 Hawai'i at 187 & n. 6, 145 P.3d at 730 & n. 6. First Insurance indicated that it would not provide her with benefits pursuant to her assigned claim because, First Insurance maintained, it had "offered" her an "applicable" alternative to her assigned claim, in the form of UM coverage that she, now regrettably, declined. 112 Hawai'i at 187–88, 145 P.3d at 730–31. Accordingly, Willis filed the underlying suit in the circuit court of the first circuit, the Honorable Eden Elizabeth Hifo

presiding. 112 Hawai'i at 187, 145 P.3d at 730. The circuit court awarded summary judgment in favor of First Insurance and against Willis. 112 Hawai'i at 188, 145 P.3d at 731. Willis appealed. (The circuit court's disposition of Willis's and First Insurance's direct and cross-claims against Swain, 112 Hawai'i at 188 & n. 8, 145 P.3d at 731 & n. 8, were not challenged on appeal.)

In our October 26, 2006 published opinion, we reasoned that First Insurance had, at most, presented to Willis "an invitation to initiate negotiation, not an offer" of UM coverage. 112 Hawai'i at 190 & n. 11, 145 P.3d at 733 & n. 11. We concluded that,

> First Insurance having made no offer of UM coverage in the first place, *a fortiori*. we cannot say that First Insurance has demonstrated an "applicable" and "identi-fi[able]" alternative to Willis's assigned claim. It follows inexorably that First Insurance was not "entitled to judgment as a matter of law" . . . .

112 Hawai'i at 190, 145 P.3d at 733.

Ultimately, we granted Willis's desired relief by "vacat[ing] the circuit court's .. judgment insofar as it dismissed Willis's action against First Insurance and remand[ing] for further proceedings consistent with [this court's] opinion." *See* 112 Hawai'i at 191, 145 P.3d at 734. On November 20, 2006, Willis filed the present request.

## II. *DISCUSSION*

### A. *Introduction*

In her bill of fees and costs, Willis requests reimbursement for attorney's fees of $21,449.87 and for the following costs: (1)

---

upon judicial proceeding . . . determines that the claim was unreasonable, fraudulent, excessive, or frivolous . . . .

**2.** A concise clarification of the difference between a certificate policy (essentially subsidized automobile insurance for those who could not otherwise obtain it) and an assigned claim (essentially last-resort coverage for parties who are injured by *others'* vehicles that are under- or uninsured, *see infra* ), is provided by Hawai'i Administrative Rules § 16–23–67 (1999):

(a) [ (concerning certificate policies under HRS § 431:10C–407) ] The [JUP] is intended to

provide motor vehicle insurance and optional additional insurance in a convenient and expeditious manner for . . . persons who otherwise are in good faith entitled to, but unable to obtain, motor vehicle insurance . . . through ordinary methods . . . .

(b) [ (concerning assigned claims under HRS § 431:10C–408) ] Another part of the JUP consists of the assignment thereto of claims of victims for whom no policy is applicable, such as the hit-and-run victim who is not covered by a motor vehicle insurance policy . . . .

transcripts ($143.08); (2) filing fees ($225.00); and (3) "Printing/copying of briefs/appendices" ($271.00).

### B. *Fees*

#### 1. *The parties' arguments*

Willis requests reimbursement for the seventy-eight hours expended on appeal by her attorney, at a rate of $275.00 per hour. First Insurance objects:

> [T]here is no statutory authority to support [Willis]'s request for attorney's fees ...
>
> ....
>
> [HRS § 431:10C–211(a), *see supra* note 1,] provides no support ... because [Willis] is not "[a] person making a claim for personal injury protection [ (PIP) ] benefits[.]" [Her] claim ... is ... for assigned claims coverage.... In fact, as a recipient of public assistance benefits, [Willis] is expressly excluded from receiving PIP benefits. It is also a matter of record ... that [her] medical expenses ... were paid for by the State of Hawai['] Department of Human Services.
>
> ... [HRS § 431:10–242 (2005) ("Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder ... shall be awarded reasonable attorney's fees ....")] also provides no support .... 
>
> [Willis]'s request for payment of benefits by First Insurance is not ... made under any "policy." ... By definition, a claimant under the Assigned Claims Coverage Program is a person for whom "[n]o ... insurance benefits under motor vehicle insurance policies are applicable[.]" ...

Willis counters that "this Court has specifically regarded and treated a[n] ... assigned claim as a 'policy[.']" (Citing *Washington v. Fireman's Fund Ins. Cos.,* 68 Haw. 192, 708 P.2d 129 (1985).)

#### 2. *Analysis*

We agree with First Insurance that Willis's asserted basis for fees, HRS

§ 431:10C–211(a), *see supra* note 1, which applies where an insurer has "denie[d] ... a claim ... under [a] *policy* " (emphasis added), is unavailing. Assigned claims are creatures of statute and do not arise out of a contractual relationship. On the other hand, Black's Law Dictionary defines a "policy" in the relevant sense as "[a] *document* containing a *contract* of insurance." *Black's Law Dictionary* 1196 (8th ed.2004) (emphases added); *accord United Benefit Life Ins. Co. v. McCrory,* 414 F.2d 928, 932–33 (8th Cir. 1969); *S.E. Colo. Homeless Ctr. v. West,* 843 P.2d 117, 118 (Colo.Ct.App.1992); *Maurer v. Int'l Re–Ins. Corp.,* 86 A.2d 360, 365 (Del. 1952); *Maurer v. Int'l Re–Ins. Corp.,* 31 Del.Ch. 352, 360, 74 A.2d 822, (Del.1950); *Fontenot v. Marquette Cas. Co.,* 235 So.2d 631, 637 (La.Ct.App.1970); *In re Casey,* 540 N.W.2d 854, 857 (Minn.Ct.App.1995); *Floars v. Aetna Life Ins. Co.,* 144 N.C. 232, 56 S.E. 915, 916 (1907); *Banfield v. Allstate Ins. Co.,* 152 N.H. 491, 880 A.2d 373, 376 (2005); *Hunt v. N.H. Fire Underwriters' Ass'n,* 68 N.H. 305, 38 A. 145, 147 (1895); *see also Thieme v. Union Labor Life Ins. Co.,* 12 Ill.App.2d 110, 138 N.E.2d 857, 860 (1956); *Francis v. Tex. & Pac. Ry. Employees Hosp. Ass'n,* 148 So.2d 118, 120 (La.Ct.App.1963); *Hurd v. Me. Mut. Fire Ins. Co.,* 139 Me. 103, 27 A.2d 918, 922 (1942); *Anderson v. N.W. Bell Tel. Co.,* 443 N.W.2d 546, 549 (Minn.Ct.App.1989); *Delcampo v. N.J. Auto. Full Ins. Underwriting Ass'n,* 266 N.J.Super. 687, 630 A.2d 415, 421–22 (1993) (quoting *Meier v. N.J. Life Ins. Co.,* 195 N.J.Super. 478, 480 A.2d 919, 923 (1984)); *Modisette v. Found. Reserve Ins. Co.,* 77 N.M. 661, 427 P.2d 21, 25 (N.M. 1967); *Bergmann v. Hutton,* 337 Or. 596, 101 P.3d 353, 358 (2004); *Ellis v. R.I. Pub. Transit Auth.,* 586 A.2d 1055, 1058 (R.I.1991).

Furthermore, whereas the legislature enunciated that a certificate policy "shall be deemed a policy for the purposes of [the Insurance Code, HRS ch. 431]," the legislature did not similarly categorize assigned claims. *Compare* HRS § 431:10C–407(b)(2) (concerning certificate policies); Unif. Motor Vehicle Accident Reparations Act § 19(b), 14 U.L.A. 82 (2005 & Supp.2006) (providing that

an assignee insurer "has ... obligations as if [it] had issued a policy of basic reparation insurance"); Kan. Stat. Ann. § 40–3116(d) (Westlaw 2006); Mass. Gen. Laws Ann. ch. 90, § 34N (Westlaw 2006); Minn.Stat. Ann. § 65B.63.2 (Westlaw 2006); *Smith v. Earp,* 449 F.Supp. 503, 507 (W.D.Ky.1978) (mem. op.) (where insurer paid plaintiffs' assigned claim and opted not to intervene as subrogee yet obtained reimbursement out of plaintiffs' monetary judgment pursuant to agreement between insurer and plaintiffs, holding insurer responsible for plaintiffs' attorney's fees *pursuant to state statute* that provided that "assignee ... has ... obligations as if [it] had issued a *policy* of basic reparation insurance" (emphasis added)) (construing Ky.Rev. Stat. Ann. § 304.39–170(2)), *with* HRS § 431:10C–408 (concerning assigned claims). "*Expressio unius est exclusio alterius* [—]the express mention of one thing implies the exclusion of another. ..." *See, e.g., State v. Harada,* 98 Hawai'i 18, 42, 41 P.3d 174, 198 (2002) (internal quotation signals omitted).

Moreover, Willis's citation to *Washington* is inapposite. In that case, the plaintiffs had no-cost no-fault insurance policies, pursuant to HRS § 294–24(b)(2) (Supp.1984), *see* 68 Haw. at 194–95, 708 P.2d at 131–32, which was the predecessor to the current HRS § 431:10C–410(3)(A) (waiving premiums for public assistance recipients)—in other words, certificate policies. Nowhere is the concept of an assigned claim mentioned, nor was the meaning of "policy" in dispute.

Finally, one might argue (Willis does not) that fees are simply a component of the "full [PIP] benefits" guaranteed to assigned claimants by HRS § 431:10C–408(c)(1), but HRS § 431:10C–304(5) provides that "[n]o part of [PIP] benefits paid shall be applied in any manner as attorney's fees" and that, where fees *are* authorized, they are "*in addition to* the [PIP] benefits due" (emphasis added); in other words, the statutory language implies that the legislature considers fees a separate species from PIP benefits.

■ We hold that the assigned claim coverage to which this court deemed Willis entitled does not constitute a "policy" for purposes of HRS § 431:10C–211(a). Consequently, we find, as relates to the present matter, no legislative aim to rebut the American rule whereby litigants pay their own legal expenses of litigation, *see generally Taomae v. Lingle,* 110 Hawai'i 327, 331, 132 P.3d 1238, 1242 (2006).

## C. Costs

■ HRS § 607–9 (1993) ("All actual disbursements ... sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.") and HRAP Rule 39, *see supra* note 1, permit this court to tax Willis's costs against First Insurance, her only substantive adversary on appeal, *see Willis I,* 112 Hawai'i at 185, 188 n. 8, 145 P.3d at 728, 731 n. 8.

First Insurance does not object to Willis's averred costs. Accordingly, we grant the total amount of costs requested.

## III. *CONCLUSION*

In light of the foregoing analysis, we deny Willis's request with respect to attorney's fees and grant it, in part, with respect to costs.[3] First Insurance is ordered to pay Willis a total of $639.00.

---

**3.** Willis appears to have either committed a minor addition error to arrive at her "Total Costs Requested" (eight cents in First Insurance's favor) or simply rounded off the grand total from $639.08 to $639.00. For the sake of fairness, we reach the same result by ignoring the decimal portion of the transcript charges.