270 P.3d 1042

**Shilo WILLIS, Plaintiff–Appellant,**

v.

**Craig SWAIN, First Insurance Company of Hawaii, Ltd., Defendants–Appellees,**

and

**Doe Defendants 1–100, Defendant.**

**No. 29539.**

Intermediate Court of Appeals of Hawai'i.

Feb. 3, 2012.

Fernando L. Cosio, (Law Office of Fernando L. Cosio), on the briefs, for Plaintiff–Appellant.

Bradford F.K. Bliss, (Lyons, Brandt, Cook & Hiramatsu), on the briefs, for Defendant–Appellee First Insurance Company of Hawaii, Ltd.

NAKAMURA, C.J., LEONARD, and GINOZA, JJ.

Opinion of the Court by GINOZA, J.

This is the second appeal in this action, which arises from a motor vehicle collision. After remand from the first appeal, Defendant–Appellee First Insurance Company of Hawaii, Ltd. (First Insurance) paid assigned claim benefits to Plaintiff–Appellant Shilo Willis (Willis) under Hawaii's Joint Underwriting Plan (JUP). The Circuit Court of the First Circuit (circuit court)[1] then granted First Insurance's motion for summary judgment on all remaining claims alleged by Willis against First Insurance, including without limitation claims for breach of contract, misrepresentation, negligent or intentional infliction of emotional distress, unfair claims practices, unfair or deceptive acts or practices, and bad faith.

Willis appeals from the circuit court's Final Judgment filed on December 11, 2008 which entered judgment in favor of First Insurance and against Willis with respect to all claims not specifically addressed in the Hawai'i Supreme Court's opinion in the first appeal, *Willis v. Swain,* 112 Hawai'i 184, 145 P.3d 727 (2006) (*Willis I* ).

Willis asserts the following points of error in this appeal: (1) the circuit court erred in granting First Insurance's motion for summary judgment and dismissing the bad faith and emotional distress claims; (2) the circuit court erred in denying Willis's motion to compel discovery as moot because discovery was critical in determining Willis's claims against First Insurance, including the bad faith and emotional distress claims; (3) the

---

1. The Honorable Eden Elizabeth Hifo presided.

circuit court erred in determining that the prior appeal resolved an open question of law and that *Enoka v. AIG Hawaii Insurance Co.*, 109 Hawai'i 537, 128 P.3d 850 (2006) "forgives" the error made by First Insurance when it previously denied Willis the JUP assigned claim benefits; (4) the circuit court erred in concluding that there is no cognizable claim for bad faith in the absence of a contract; and (5) genuine issues of material fact precluded the granting of First Insurance's motion for summary judgment.

As explained below, we affirm the circuit court's Final Judgment.

## I.  Case Background

This case arises out of a motor vehicle collision on February 10, 1999, wherein Willis was a passenger in an uninsured vehicle driven by Defendant Craig Swain (Swain), which rear-ended another vehicle. At the time of the collision, Willis was enrolled under a "certificate policy" issued at no cost to her through Hawaii's JUP pursuant to Hawaii Revised Statutes (HRS) § 431:10C–407(b)(2) (Supp.1998). Willis's certificate policy was effective from July 2, 1998 to July 2, 1999. JUP certificate policies at the time of the accident provided "personal injury protection benefits and bodily injury and property damage policies" for various classes of persons, including licensed drivers receiving a certain type of public assistance benefits. HRS § 431:10C–407(b)(2). Willis's certificate policy with First Insurance did not include uninsured motorist (UM) coverage.

Due to the collision, Willis sustained bodily injuries, received medical treatment and incurred medical bills. After the accident, Willis also applied for benefits under the JUP "assigned claim" plan, which was assigned to First Insurance pursuant to HRS § 431:10C–408 (Supp.1998).[2] At the time of the accident, HRS § 431:10C–408(a) stated:

> § 431:10C–408  **Assigned claims.** (a) Each person sustaining accidental harm, or such person's legal representative, may, except as provided in subsection (b), obtain the motor vehicle insurance benefits through the plan whenever:
>
> (1) No insurance benefits under motor vehicle insurance policies are applicable to the accidental harm;
>
> (2) No such insurance benefits applicable to the accidental harm can be identified; or
>
> (3) The only identifiable insurance benefits under motor vehicle insurance policies applicable to the accidental harm will not be paid in full because of financial inability of one or more self-insurers or insurers to fulfill their obligations.

In *Willis I*, the Hawai'i Supreme Court addressed whether Willis was entitled to benefits under the assigned claim plan.[3] The supreme court vacated the circuit court's grant of summary judgment in favor of First Insurance, ruling as follows:

> we hold that the circuit court erred in awarding summary judgment in favor of First Insurance and against Willis. Ac-

---

**2.** In *Willis I*, the Hawai'i Supreme Court explained:

> Willis's certificate policy would have been governed by HRS § 431:10C–407, whereas her later "assigned claim" sought "last resort" coverage under HRS § 431:10C–408. A concise clarification of the JUP's two distinct functions is provided by HAR § 16–23–67 (1999):
>
> > (a) The [JUP] is intended to provide motor vehicle insurance and optional additional insurance in a convenient and expeditious manner for ... persons who otherwise are in good faith entitled to, but unable to obtain, motor vehicle insurance and optional additional insurance through ordinary methods. Insurers will pool their losses and bona fide expenses under [the] JUP to prevent the imposition of any inordinate burden on any particular insurer.

> > (b) Another part of the JUP consists of the assignment thereto of claims of victims for whom no policy is applicable, such as the hit-and-run victim who is not covered by a motor vehicle insurance policy. The losses and expenses under the assigned claims program are pro-rated among and shared by all motor vehicle insurers and self-insurers.
>
> 112 Hawai'i at 187 n. 6, 145 P.3d at 730 n. 6.

**3.** In the circuit court, First Insurance had argued that Willis was not entitled to assigned claim benefits because she elected not to purchase additional UM coverage under her certificate policy and thus her assigned claim was an attempt to obtain free UM coverage which she previously chose not to purchase. The circuit court granted summary judgment for First Insurance. *Willis I*, 112 Hawai'i at 187–88, 145 P.3d at 730–31.

cordingly, we vacate the circuit court's July 24, 2003 judgment insofar as it dismissed Willis's action against First Insurance and remand for further proceedings consistent with this opinion. On remand, to the extent that the trier of fact finds that Willis's post-July 2, 1999 medical expenses remain unpaid and her assigned claim complies with the Motor Vehicle Insurance Law in other respects, the circuit court shall order First Insurance to tender the appropriate benefits *under the assigned claims program.*

112 Hawaiʻi at 191, 145 P.3d at 734 (emphasis added). The supreme court did not address Willis's other claims, including the bad faith claim.[4]

Following *Willis I,* First Insurance paid Willis benefits under the JUP assigned claims program. Upon remand to the circuit court, First Insurance then moved for summary judgment with respect to Willis's remaining claims, arguing that it had complied with the supreme court's decision and hence there was no basis for any further recovery under the other claims.

In an order issued on October 3, 2007, the circuit court first found that "[i]t is undisputed that First Insurance has paid all benefits that Plaintiff is entitled to recover as an assigned claims claimant under the Hawaii Joint Underwriting Plan pursuant to and in compliance with the Supreme Court's opinion in this case."[5] The circuit court then granted First Insurance's motion for summary judgment on all of Willis's remaining claims, "including, without limitation, any claim for breach of contract, misrepresentation, negligent or intentional infliction of emotional distress, unfair claims practices, unfair or deceptive acts or practices in violation of Hawaii Revised Statutes § 480–2 or bad faith." With respect to the bad faith claim, the circuit court held "as a matter of law that there is no cognizable claim for bad faith in the absence of a contract." The

circuit court further held "that the published opinion of the Hawaii Supreme Court in this case settled an open question of law and therefore pursuant to … *Enoka v. AIG Hawaii Ins., Co., Inc.,* 109 Hawaiʻi 537, 128 P.3d 850 (2006), there was no bad faith on the part of First Insurance."

On December 22, 2008, Willis timely filed a notice of appeal from the circuit court's December 11, 2008 Final Judgment.

## II. *Discussion*

In her opening brief, Willis expressly states that she is not appealing the circuit court's decision to dismiss her claims for breach of contract, misrepresentation and unfair claims practices. Moreover, although her points of error refer in part to claims for emotional distress, Willis fails to present any argument regarding the circuit court's dismissal of such purported claims. Thus, any points of error regarding claims for negligent or intentional infliction of emotional distress have been waived.[6] The only claim raised in Willis's points of error and argued is her claim for bad faith.

We review the circuit court's grant of summary judgment *de novo. Enoka,* 109 Hawaiʻi at 543, 128 P.3d at 856.

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the

---

4. In another opinion, the Hawaiʻi Supreme Court addressed Willis's motion for attorney's fees and costs incurred on appeal. *See Willis v. Swain,* 113 Hawaiʻi 246, 151 P.3d 727 (2006) (*Willis II*). In that opinion, the court held that Willis was not entitled to statutory attorney's fees pursuant to HRS § 431:10C–211 (2005 Repl.), but that Willis was entitled to costs from First Insurance in the amount of $639.00. *Id.* at 250,

151 P.3d at 731. *Willis II* is further discussed *infra.*

5. Willis does not contest this finding.

6. *See* Hawaiʻi Rules of Appellate Procedure, Rule 28(b)(7) ("Points not argued may be deemed waived."); *Buscher v. Boning,* 114 Hawaii 202, 221, 159 P.3d 814, 833 (2007).

light most favorable to the party opposing the motion.

*Id.* at 543–44, 128 P.3d at 856–57 (citation omitted).

■ In this case, as a matter of law, Willis has no cognizable claim for bad faith arising from her assigned claim because there is no underlying contract of insurance. *See Simmons v. Puu*, 105 Hawaiʻi 112, 94 P.3d 667 (2004). Although the parties fail to discuss *Simmons* in their briefs, its analysis of bad faith claims is particularly instructive in this case. In *Simmons*, plaintiff Curtis Simmons operated a vehicle that was involved in an accident with another vehicle owned and self-insured by Hertz. Among other claims, Simmons asserted a bad faith claim against Hertz. In holding that Simmons did not have a claim for bad faith against self-insured Hertz, the Hawaiʻi Supreme Court determined that a *contract* must underlie the tort of bad faith. 105 Hawaiʻi at 118–23, 94 P.3d at 673–78.

The court in *Simmons* analyzed its prior decision in *Best Place, Inc. v. Penn America Insurance Co.*, 82 Hawaiʻi 120, 920 P.2d 334 (1996), which had recognized the bad faith cause of action in Hawaiʻi, and noted that "this court largely relied on contract law as fundamental to its adoption of the bad faith claim for relief[.]" *Simmons*, 105 Hawaiʻi at 118, 94 P.3d at 673. The supreme court further explained:

> *Best Place* neither discussed nor contemplated the application of the tort of bad faith settlement practices in the absence of an insurance contract. *See id.* at 127–30, 920 P.2d at 341–44. This court succinctly stated that "the implied covenant of good faith and fair dealing, *implied in all contracts*, is the legal principle underlying the adoption of a bad faith tort cause of action in the insurance context[.]" *Id.* at 131, 920 P.2d at 345 (emphasis added); *see also id.* at 132, 920 P.2d at 346 (holding "that there is a legal duty, *implied in a first- and third-party insurance contract*, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent

cause of action" (emphasis added)). Even in downplaying the necessity of "the fiduciary duty on the part of the insurer in the third-party context ... [as] but one component of a broader duty to act in good faith and deal fairly with its insured[,]" *Best Place* noted that *the raison d'tre of the tort of bad faith was to avoid* "depriv[ing] the insured of the *benefits for which he or she ha[d] contracted.*" *Id.* at 129, 920 P.2d at 343 (emphasis added). 105 Hawaiʻi at 120, 94 P.3d at 675 (underline emphasis added). *See also Jou v. Nat'l Interstate Ins. Co. of Hawaiʻi*, 114 Hawaiʻi 122, 129, 157 P.3d 561, 568 (App.2007) ("In *Simmons v. Puu*, 105 Hawaiʻi 112, 94 P.3d 667 (2004), the Hawaiʻi Supreme Court emphasized that the tort of bad faith, as adopted in *Best Place*, requires a contractual relationship between an insurer and an insured.").

In this case, Willis does not assert that there is an insurance contract from which her bad faith claim arises. Rather, she relies on statutory provisions related to assigned claims under the JUP as establishing First Insurance's duty of good faith and fair dealing. Specifically, Willis relies on provisions in HRS § 431:10C–401 (2005 Repl.), § 431:10C–403 (2005 Repl.), and § 431:10C–408.[7]

HRS § 431:10C–401 states:

> **§ 431:10C–401. Participation** (a) A joint underwriting plan is established consisting of all insurers authorized to write and engage in writing motor vehicle insurance in this State, except those insurers writing motor vehicle insurance exclusively under section 431:10C–106.
>
> (b) Each insurer shall be a member of the plan and shall maintain membership as a condition of its licensure to transact such insurance in this State.

In turn, Willis points to the following in HRS § 431:10C–403:

> **§ 431:10C–403. Bureau's duties** The bureau shall promptly assign each claim and application, and notify the claimant or applicant of the identity and address of the

---

7. For HRS § 431:10C–401 and § 431:10C–403, the versions contained in the HRS 2005 Replacement volume are the same as applied at the time of the accident in February 1999. For HRS § 431:10C–408, the applicable version is contained in the HRS 1998 Supplement.

assignee of the claim or application. Claims and applications shall be assigned so as to minimize inconvenience to claimants and applicants. *The assignee, thereafter, has rights and obligations as if it had issued motor vehicle mandatory public liability and property damage policies complying with this article applicable to the accidental harm or other damage,* or, in the case of financial inability of a motor vehicle insurer or self-insurer to perform its obligations, as if the assignee had written the applicable motor vehicle insurance policy, undertaken the self-insurance, *or lawfully obligated itself to pay motor vehicle insurance benefits.*

(Emphasis added). Willis also relies on HRS § 431:10C-408(c)(2), which states:

**§ 431:10C-408. Assigned claims**....

(c) Any person eligible for benefits under this part, and who becomes eligible to file a claim or an action against the mandatory bodily injury liability or property damage liability policies, shall, upon the bureau's determination of eligibility, be entitled to:

...

(2) *The rights of claim and action against the insurer,* assigned under section 431:10C-403, with reference to the mandatory bodily injury liability policy for accidental harm, and with reference to the mandatory property damage liability policy for property damage sustained.

(Emphasis added).[8]

Given the analysis in *Simmons* and its "[h]aving established that the common law

---

8. Alternatively, Willis cites to HRS § 431:10C-401 and argues that she is "an intended beneficiary of the JUP assigned claim policy because there is a contractual relationship between the State of Hawaii and First Insurance as it relates to the administration and assignment of the JUP assigned claims, and as a condition of insurance companies doing business in the State of Hawaii." However, HRS § 431:10C-401 does not require, and Willis does not point to, a contract between the State of Hawai'i and First Insurance as it relates to assigned claims.

9. HRS § 431:10C-211(a) provides, in relevant part:

**§ 431:10C-211 Attorney's fees.** (a) A person making a claim for personal injury protection

---

tort of bad faith settlement practices arises only from a contract of insurance," 105 Hawai'i at 123, 94 P.3d at 678, Willis's reliance on the JUP statutory provisions for assigned claims fails to establish that she has a claim for bad faith against First Insurance.

Previously in this case, addressing Willis's claim for attorney's fees incurred on appeal under HRS § 431:10C-211,[9] the supreme court has already rejected Willis's argument that her assigned claim should be regarded and treated as a "policy." *Willis II,* 113 Hawai'i at 249, 151 P.3d at 730. Significantly, the supreme court recognized that Willis's assigned claim was not contractual in nature.

We agree with First Insurance that Willis's asserted basis for fees, HRS § 431:10C-211(a), *see supra* note 1, which applies where an insurer has "denie[d] ... a claim ... under [a] *policy* " (emphasis added), is unavailing. Assigned claims are creatures of statute and do not arise out of a contractual relationship. On the other hand, Black's Law Dictionary defines a "policy" in the relevant sense as "[a] *document* containing a *contract* of insurance." *Black's Law Dictionary* 1196 (8th ed.2004) (emphasis added)....

*Id.* (citations omitted, underline emphasis added).[10]

Thus, as already determined in *Willis II,* Willis's assigned claim does not arise from a contract, and given the holding in *Simmons,* the circuit court properly granted summary judgment in favor of First Insurance on Willis's claim for bad faith.

---

benefits may be allowed an award of a reasonable sum for attorney's fees, and reasonable costs of suit in an action brought ... against an insurer who denies ... a claim for benefits *under the policy,* unless the court upon judicial proceeding ... determines that the claim was unreasonable, fraudulent, excessive, or frivolous.
(Emphasis added).

10. In *Willis II,* the supreme court also distinguished between assigned claims and a certificate policy, stating that "whereas the legislature enunciated that a certificate policy 'shall be deemed a policy for the purposes of [the Insurance Code, HRS ch. 431],' the legislature did not similarly categorize assigned claims." 113 Hawai'i at 249, 151 P.3d at 730 (citations omitted).

 

In light of the above, we need not and therefore do not address the other points of error raised by Willis. We need not decide whether the circuit court erred in holding that *Willis I* settled an "open question of law" precluding a bad faith claim under *Enoka*. We also need not determine if there were genuine issues of material fact that precluded summary judgment on the bad faith claim. Rather, as stated, Willis's bad faith claim fails as a matter of law for lack of an underlying contract.

Additionally, because Willis does not have a cause of action for bad faith against First Insurance, the circuit court properly denied Willis's motion to compel discovery against First Insurance relevant to her bad faith claim.

### III. *Conclusion*

For the reasons set forth above, the circuit court's Final Judgment entered on December 11, 2008 is affirmed.